
UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re: ) Chapter 13
)
DAVID M. WATERMAN and ) Case No. 4:11-bk-02598-EWH
MILDRED M. WATERMAN, )
)
) **MEMORANDUM DECISION**
Debtors. )
)

## I. INTRODUCTION

Denise Peck ("Peck") seeks relief from the automatic stay in order to enforce three spousal-maintenance judgments against her ex-husband, David Waterman ("Waterman"). For the reasons explained in the balance of this opinion, relief is DENIED because Peck has failed to prove that cause for relief exists.

## II. FACTUAL AND PROCEDURAL HISTORY

Waterman and his current spouse, Mildred (collectively "Debtors"), filed a Chapter 13 voluntary petition on January 31, 2011. On Schedule F, Debtors listed Peck as holding an unsecured nonpriority claim in the amount of $104,040.01. The debt arises out of a Decree of Dissolution of Marriage (the "Decree") entered by Arizona

Superior Court (the "Superior Court") on November 16, 1992.  In paragraph 12 of the Decree, the Superior Court ordered Waterman to "assume sole responsibility" for certain financial obligations and "hold [Peck] free and harmless therefrom" (the "Hold Harmless Provision").  Debtors seek to discharge some of the Hold Harmless Provision debt pursuant to § 1328(a)(2).[1]

There are additional details from the Decree that merit mention.  The introduction acknowledged that the parties had "entered into a non-modifiable support agreement" which "clearly" expressed their intent that it would not be modified under any circumstances and "constitute a lump sum payment of spousal maintenance." To that end, Paragraph 3 provided that Waterman would pay Peck $210,000 in "non-modifiable spousal maintenance" over the course of seven years and that these payments were a tax deduction for Waterman and income for Peck.  It continued that both parties acknowledged the spousal maintenance to be, in part, "an exchange for partial property division" and that "spousal maintenance shall not be dischargeable in bankruptcy." Paragraph 11 detailed a hold-harmless obligation undertaken by Peck, who was to assume sole responsibility for certain consumer credit debts and a pension contribution Paragraph 12 included among the Hold Harmless Provision obligations assumed by Waterman a home-equity line of credit, several other lines of consumer credit, and amounts owing to Waterman and Peck's pension plans.  The Hold Harmless Provision noted that the money Waterman was ordered to pay was "not ta[]xable to [Peck]." Paragraphs 4 through 17 each addressed division of property.  And in Paragraph 18,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  The Federal Rules of Bankruptcy Procedure, Rules 1001-9037, are referred to as "Rules."  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

the parties agreed that "all debts…and attorneys' fees and costs ordered to be paid" by Waterman were deemed in the nature of support and, therefore, non-dischargeable.

On July 22, 2011, Peck moved for relief from the automatic stay in Debtors' bankruptcy case. Peck alleges that as of July 21, 2011, Waterman owes her spousal maintenance from the Decree, and that in three discrete judgments ("the Maintenance Judgments"), the Superior Court has ordered Waterman to pay Peck. Peck lists the amounts of the Maintenance Judgments as follows: (1) $124,800.75, representing $118,503.51 in principal and $6,297.24 in interest accruing at 10% per annum; (2) $9,369.24, representing $7,447.90 in principal and $1,889.54 in interest accruing at 10% per annum; (3) $6,480.92, representing $6,155 in principal and $325.92 in interest accruing at 10% per annum. According to Peck, Waterman has frustrated the intent of the Maintenance Judgments by periodically altering his employment information so that wage garnishments attach to corporate entities that he controls but not to him personally. Peck further alleges that the Superior Court has held that at least one of these entities is an alter ego for Waterman, and that Waterman has filed for bankruptcy protection as a last resort to avoid paying the Maintenance Judgments.

Peck seeks relief pursuant to § 362(d) so that she may collect what she claims is a domestic support obligation ("DSO")[2], a debt entitled to administrative priority under § 507(a)(1)(A). Additionally, Peck asserts that the Maintenance Judgments are presumed to be non-dischargeable under § 523(a)(15).

On August 5, 2011, Debtors filed an objection to Peck's motion. Debtors argue that the judgment for $118,503.51 is due under the Hold Harmless Provision and,

---

[2] As explained below, Section 101(14A) defines "domestic support obligation."

3

therefore, dischargeable because the Hold Harmless Provision is not a DSO that would allow Peck to assert a claim under § 507(a)(1)(A).  Debtors also argue that notwithstanding Waterman and Peck's agreement in Paragraph 18 that all debt, attorneys' fees, and costs were in the nature of support and non-dischargeable, Paragraph 18 is unenforceable and the $118,503.51 Maintenance Judgment is dischargeable through Debtors' Chapter 13 plan.  As a result, Debtors contend, Peck is not entitled to relief.

Debtors add that the two other Maintenance Judgments are punitive awards for attorneys' fees that fall outside the definition of a DSO and do not provide cause for stay relief.  Finally, Debtors contest Peck's assertion that the Hold Harmless Provision debt is presumed to be non-dischargeable under § 523(a)(15).  Debtors assert that in a Chapter 13, a debt which falls under § 523(a)(15) may be treated as a general unsecured claim, is not presumed non-dischargeable, and does not create an administrative claim.

Debtors expanded on their arguments in a Memorandum submitted on February 14, 2012 in advance of an evidentiary hearing on Peck's motion for relief.  The Memorandum contends that the Hold Harmless Provision is a property settlement of the kind recognized by § 523(a)(15) as dischargeable under § 1328(a)(2).  Debtors also argue that at the time of the Decree, the parties intended for the Hold Harmless Provision to serve as a property settlement.  In support of this argument, Debtors note that: (1) a separate paragraph expressly provides for spousal support; (2) the Hold Harmless Provision is sequentially located in the middle of other property-settlement provisions; (3) the Hold Harmless Provision addressed non-support debt; (4) the

4

obligations created by the Hold Harmless Provision were not contingent upon other factors that influence a need for support; (5) payments were made directly to creditors and not Peck; (6) Peck's financial condition at the time (she was sole owner of a corporation and had earned a master's degree in psychology) did not necessitate support; (7) the marriage was short lived; and (8) it yielded no children.

The Court held an evidentiary hearing on this matter on February 28, 2012 and took it under submission.

### III.  ISSUE

Does the Hold Harmless Provision debt qualify as a DSO?

### IV.  JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G), and (I).

### V.  DISCUSSION

Domestic Support Obligation

The Bankruptcy Code defines a DSO as a debt owed to a former spouse "in the nature of alimony, maintenance, or support…of such…former spouse…without regard to whether such debt is expressly so designated…" and established by a dissolution decree.  11 U.S.C. § 101(14A).  DSO determination is important in a bankruptcy case because § 523(a)(5) provides that a debtor may not discharge a DSO under any chapter, including Chapter 13, and § 507(a)(1)(A) grants a first priority to unsecured claims for DSOs. 11 U.S.C. §§ 523(a)(5) and 507(a)(1)(A).

To determine whether a particular debt is a DSO, a court "considers whether the debt is 'actually in the nature of support.'" Beaupied v. Chang (In re Chang), 163 F.3d

5

Case 4:11-bk-02598-EWH    Doc 63    Filed 06/25/12    Entered 06/26/12 08:03:28    Desc
Main Document - Memorandum/Opinion    Page 5 of 11

1138, 1140 (9th Cir. 1998) (quoting Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984)). Though a relevant factor to consider is how state law characterizes the debt, Chang, 163 F.3d at 1140, the question is ultimately "a factual determination made by the bankruptcy court as a matter of federal bankruptcy law." Id. Federal courts, when applying the Bankruptcy Code, are not bound by state labels. Shaver, 736 F.2d at 1316. "In determining whether a debtor's obligation is in the nature of support, the intent of the parties at the time the settlement agreement is executed is dispositive." Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400, 1405 (9th Cir. 1996), overruled on other grounds, Murray v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997).

Sternberg instructs that to divine the parties' intent a court must consider the totality of the circumstances, relying on factors including a dissolution decree's language, the financial condition of the parties when the document was created, whether one party or another receives the marital property, the periodic nature of payments under the obligation, whether the obligation terminates upon the death or remarriage of the recipient, and the ability of the recipient to live without the payments. Id.; Phegley v. Phegley (In re Phegley), 443 B.R. 154, 158 (9th Cir. BAP 2011). In the present case, the pertinent factors weigh against construing the Hold Harmless Provision as a DSO.

The language of the Decree and its structure indicate that the Hold Harmless Provision was a property settlement. The Hold Harmless Provision is located within a series of paragraphs dividing marital property and apportioning responsibility for various marital debts. It directly follows a parallel hold harmless provision obligating Peck to

6

pay certain debts, and the Peck hold harmless paragraph offers symmetry for Waterman's Hold Harmless Provision.

By contrast, Paragraph 3 of the Decree expressly provides for "non-modifiable spousal maintenance" that the parties stipulated would be non-dischargeable. Though this Court is not bound by that characterization, Chang, 163 F.3d at 1140, it is instructive when seeking to determine the parties' intentions at the time they entered into the Decree. Paragraph 3 represents a DSO, and this determination is supported by the introductory language which refers to Paragraph 3 as "a lump sum payment of spousal maintenance."

A similar distinction can be drawn between the tax treatment provided for in Paragraphs 3 and 18.[3] The former instructs that Waterman may count the spousal maintenance payments as a tax deduction while Peck must count them as income. The latter stipulates that payments under the Hold Harmless Provision are not taxable income for Peck. This differing tax treatment is consistent with the content of the Hold Harmless Provision, which is in a section of the Decree that addresses allocating consumer debts, a home-equity credit line, and pension obligations between the divorcing spouses. The Hold Harmless Provision does not include expenses that resemble everyday support, such as those for housing, education, and other necessaries. Nor does it generate income for Peck, as demonstrated by the fact that Waterman has made Hold Harmless Provision payments directly to third parties.

---

[3] Spousal maintenance payments ordered by a divorce decree are treated by the recipient as income for tax purposes. However, payments pursuant to a property settlement are not. INTERNAL REVENUE SERV., PUBL'N 504, CAT. NO. 15006I, DIVORCED OR SEPARATED INDIVIDUALS (2011).

7

Paragraph 18 is the strongest argument in favor of reading the Hold Harmless Provision as a DSO. It unambiguously declares "that all debts and obligations and attorneys' fees and costs ordered to be paid by [Waterman]…are deemed in the nature of support and are therefore not dischargeable…." The plain language seems to indicate that the parties intended for all of Waterman's obligations under the Decree to be in the nature of support. However, when the Decree is considered in its entirety, it is clear that the Hold Harmless Provision was not a DSO, notwithstanding the language of Paragraph 18. In light of the specific language in Paragraphs 3 and 12, along with the overall structure of the Decree, Paragraph 18 by itself is insufficient to prove that the Hold Harmless Provision was a non-dischargeable support obligation. Dischargeability determinations are an exclusive province of federal courts. See, e.g., Chang, 163 F.3d at 1140; Shaver, 736 F.2d at 1316; Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 137-38 (9th Cir. BAP 1997); Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1177 (9th Cir. 2002).

Additional Sternberg factors to be considered also fail to support Peck's position. At the time of the Decree, Peck held a master's degree in psychology and controlled an ownership interest in a small corporation. Waterman was an attorney. Peck did not make a strong argument about the parties' relative financial condition, but the limited facts presented do not indicate a gross imbalance. Furthermore, Waterman assumed sole responsibility for the debts listed in the Hold Harmless Provision, but his duty to pay is not conditioned upon future contingencies such as death, re-marriage, or other circumstances which implicate support payments. Shaver, 736 F.2d at 1316.

8

The totality of the circumstances indicates that the Hold Harmless Provision is not a DSO.

Dischargeability

Because the Hold Harmless Provision does not qualify as a DSO, it does not fall under § 523(a)(5)[4] and is not granted first priority by § 507(a)(1)(A)[5] as an administrative expense. Instead, the Hold Harmless Provision falls under 11 U.S.C. § 523(a)(15)'s (a)(15)'s exception to discharge, which provides that a debt "to a...former spouse...not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce..." is not dischargeable under § 1328(b). This may be what Peck had in mind when arguing that the Hold Harmless Provision debt is presumed to be non-dischargeable.

This argument is inapposite. Section 1328(b) governs hardship discharges when a Chapter 13 debtor fails to complete plan payments. That section is not applicable in this case. Rather, Debtors seek a discharge pursuant to § 1328(a), a section which governs regular Chapter 13 discharges upon the completion of plan payments. Section 1328(a)(2) provides for the discharge of all debts so long as they are not addressed by § 1322(b)(5), § 507(a)(8)(C), or a variety of § 523 subsections. Section 523(a)(15) is

---

[4] Section 523(a)(5) provides that "discharge under section 727, 1141, 1228(1), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for a domestic support obligation…."

[5] Section 507(a)(1)(A) reads in pertinent part:

> The following expenses and claims have priority in the following order:
> (1) First:
> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a…former spouse….

9

not listed within this group.  As a result, Waterman will be able to discharge the Hold Harmless Provision debt upon successfully completing plan payments.

Stay Relief

Section 362(d) provides that a party in interest may obtain stay relief: (1) for cause, including the lack of adequate protection; (2) if a debtor lacks equity in estate property that is not necessary for effective reorganization; (3) if certain conditions are met in single-asset real-estate cases; or (4) if a debtor filed for bankruptcy as part of a scheme to impede a creditor's interest in real property.  11 U.S.C. § 362(d).  The only subsection applicable to this case would be § 362(d)(1), and Peck has failed to show that cause exists for stay relief.  Peck may have intended to seek relief under §§ 362(b)(2)(B) or (C),[6] both of which provide for relief when enforcing a DSO. However, as noted, the Hold Harmless Provision is not a DSO, so relief under §§ 362(b)(2)(B) or (C) is not available.

Maintenance Judgments

Peck argues that all three Maintenance Judgments are enforceable as DSOs. However, the second and third Maintenance Judgments were meant to enforce the first, the Hold Harmless Provision debt.  Because the Hold Harmless Provision is not a DSO, none of the Maintenance Judgments are, and relief will not be granted to enforce them.[7]

---

[6] Sections 362(b)(2)(B) and (C) provide that "the filing of a [voluntary or joint bankruptcy] petition…does not operate as a stay…(B) of the collection of a domestic support obligation from property that is not property of the estate; [or] (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute…."

[7] The Court denies Peck's Motion for relief from the automatic stay. However, this decision is not a determination about the amount of the Maintenance Judgments. The parties may address that issue through the claims-resolution process.

10

## VI. CONCLUSION

The Hold Harmless Provision is not a DSO. As a result, Peck has not demonstrated that cause exists warranting relief from the automatic stay. Accordingly, the Court will enter a separate Order on this date denying Peck's Motion for Relief from the Automatic Stay.

Dated and signed above.

To be NOTICED by the Bankruptcy
Noticing Center ("BNC") to the following:

David M. Waterman
Mildred M. Waterman
2641 W. Camino Hornes
Tucson, AZ 85742

Eric Ollason
182 N. Court Ave.
Tucson, AZ 85701

Denise Peck
C/O Michael L. Price
1051 N. Columbus Blvd, Ste. 100
Tucson, AZ 85711

Scott Gibson
Kristen Green
Gibson, Nakamura & Green, PLLC
2329 N. Tucson Blvd.
Tucson, AZ 85716

Dianne C. Kerns
7320 N. La Cholla #154 PMB 413
Tucson, AZ 85741

Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, AZ 85003